## Isaac Paul *v.* Henry Hill.

### October Term, 1877.

Agreed decree — Construction.— Under an agreed decree in another cause, by which the complainant in this cause agrees that a sufficiency of the amount which may be found due him by the defendant in this suit shall be applied to the payment of the recovery of a creditor in the other cause, a first and specific lien being declared on the debt due him from the date of the filing of the creditor's bill in which the recovery was had, the creditor will have a lien only on the money recovery finally had by the complainant against the defendant in this cause, and not upon property acquired by the extinguishment, previous to the filing of the creditor's bill, of so much of the debt of the complainant against the defendant as was equal to the price of the land, and the title to which land had by decree in this cause, before the filing of the creditor's bill, been vested in the complainant.

Tax-sale — Purchaser intervening pro interesse suo.— A purchaser at tax-sale pending litigation of the property in controversy, in the custody of the court, may come in by petition *pro interesse suo*, to have his rights declared, or for leave to institute the proper legal proceedings for their assertion; but if the purchaser, or one of two joint purchasers at such tax-sale, be the solicitor and counsel of the defendant in the litigation, all he is entitled to will be the reimbursement of money paid in extinguishment of taxes, with interest.

*John Lellyett*, for complainant.
*M. M. Brien, pro interesse suo.*
*J. P. Helms*, for creditor.

The Chancellor : — On February 25, 1864, the complainant filed his original bill against the defendant, as a non-resident, to recover an alleged indebtedness, and prayed and obtained an attachment of the defendant's estate, and

attached certain real estate as the property of the defendant, and the interest of Hill in certain other realty, the joint property of complainant and defendant. On June 1, 1866, the complainant filed his amended and supplemental bill, in which he set up an additional indebtedness of the defendant to him, and alleged that before the filing of the original bill the defendant had conveyed a part of his real estate attached by that bill to E. H. Childress, to secure the payment of a debt of $1,600; that Childress had, in foreclosure of the trust, on January 6, 1866, sold said property, being the defendant's home-place, and designated in the proceedings as lots Nos. 1 and 2, at which sale complainant had become the purchaser at the price of about $6,000; that after paying the trust-debt there was a balance in the complainant's hands, which he asked might be attached and applied in satisfaction of the defendant's indebtedness to him, and the same was attached accordingly. The defendant answered these bills, and filed his answer as a cross-bill, in which, among other things, he attacked the validity of the Childress sale, and insisted that the Childress debt secured by the deed was, in part at least, the debt of complainant, and asked that he be permitted to redeem, or that the property be resold. The complainant answered the cross-bill, denying its equity, and claiming the benefit of his purchase. Such proceedings were had in this cause that, on November 27, 1872, a decree was rendered deciding the issues of the cross-bill in favor of the complainant, Paul, and awarding him a writ of possession for said lots Nos. 1 and 2. The court also, at the same time, rendered a decree in favor of the complainant and against the defendant for several thousand dollars, being the balance found due him by the master upon stating the accounts between the parties, in which accounts complainant was charged with his bid at the Childress sale, less the trust-debt, and with interest on the sum thus found from January 6, 1866, the date of that sale. The defendant prayed an appeal to the Supreme

Court, where the decree was reversed generally, and sent. back with directions to retake the account upon certain principles settled, nothing being determined by the decree touching the matters in issue under the cross-bill. After the cause came back to this court, and towards the close of the year 1876, the complainant died, having made a will, by which, after the payment of debts, he gave the " residue of his estate, of every kind, absolutely " to his wife, Anna C. Paul, and appointed her executrix; and she qualified accord- ingly. The suit was revived in her name as executrix, but not as devisee, and such proceedings were had that at the last term of this court a decree was rendered in her favor as executrix, against the defendant, for several thousand dollars, balance of account, after charging her with the testator's bid and interest at the Childress sale, less the trust-debt. The decree also subjected to the satisfaction of this balance of debt all the property attached under the bills, " except the lots Nos. 1 and 2," reciting the sale of these lots under the trust of Childress, and that the com- plainant had been charged, and the defendant credited, with the balance of bid as aforesaid. But the complainant, Anna. C. Paul, as devisee as aforesaid, presenting her bill, in the nature of a bill of revivor, to have the benefit of the pre- vious proceedings touching lots Nos. 1 and 2; and leave being given to file the same, the execution of the decree was suspended until that bill was disposed of. And, there- upon, by the consent of Anna C. Paul as executrix, a lien was declared on the recovery thus had, in favor of E. F. Mulloy, under the terms of an agreed decree in the case of *Mulloy* v. *Paul and others*, made with Paul in his lifetime. That decree, after various recitals, including a recital of the recovery of November 27, 1872, in this cause, provides that Mulloy recover of Paul two sums specified, and further provides " that a sufficiency of the amount that may be found due him (Paul) by said defendant Hill, in said cause pending between them aforesaid, be first applied to the pay--

ment of these two sums aforesaid, and they are declared a first and specific lien upon said indebtedness from said Hill to Paul from the date of the filing of the bill in this cause.''

The bill in the nature of a bill of revivor of Anna C. Paul was filed against Hill and Childress, and has been taken for confessed against them. Previously, however, and only a few days after it was filed, Mulloy petitioned to be made a defendant, and to be allowed to file an answer in order to set up his interest, if any, under the agreed decree, in the "subject-matter of the suit," namely, lots Nos. 1 and 2. The court permitted this to be done, under the Code, sec. 2799, as construed by the Supreme Court in *Hill* v. *Bowers*, 4 Heisk. 275. This bill is now before me for final hearing. The complainant, as devisee of the original complainant, is entitled, under her bill taken for confessed, to a final decree against Hill and Childress, declaring her absolute right to lots Nos. 1 and 2, under the purchase at the trust-sale, in January, 1866, with costs against Hill, but not against Childress, and to the rents, if any. But the costs will, in the first instance, be paid out of the funds or property, unless paid by complainant.

Mulloy claims that he is "interested in the subject-matter of suit" by virtue of the agreed decree made with Paul in his lifetime. That decree, it will be recollected, provides that Mulloy is to have a first and specific lien upon the indebtedness of Hill to Paul that may be found due in said cause, from the date of the filing of his bill, namely, October 12, 1875. Before that date, to wit, on November 2, 1872, Paul had recovered a decree against Hill in this cause for several thousand dollars, subjecting the property of Hill, which had been attached, to the satisfaction thereof, the same decree declaring him entitled, as purchaser, to lots Nos. 1 and 2, and extinguishing his bid for the property in the credits allowed Hill in ascertaining the balance against him. At the date of the agreed decree, the case of *Paul* v. *Hill* had been reversed by the Supreme Court and sent

back, the decree and the opinion of the Supreme Court showing that the reversal was upon the basis on which the account had been taken, and not upon that part of the decree touching lots Nos. 1 and 2, and the disposition of the proceeds of their sale. The agreed decree contains this recital: " That it further appeared to the court that the defendant Paul has a suit now pending in this honorable court against the defendant Hill, to wind up a partnership between them, and that the said Paul now has a report in his favor against said Hill for several thousand dollars." This report, the record shows, found this balance after charging Paul with the proceeds of his bid for lots Nos. 1 and 2, with interest, less the Childress debt. The record also shows that the final decree was rendered upon a report of the same character, so far as this point is concerned, and that the *status* of the case touching the title to lots Nos. 1 and 2 was then precisely what it was when the decree of November 27, 1872, was rendered, and as it now is, showing nothing against the validity of Paul's title under the trust-sale. Under these circumstances, it is too clear for argument that " the indebtedness from Hill to Paul," and " the amount that may be found due him (Paul) by said defendant Hill," upon which Mulloy was to have " a first and specific lien " by the agreed decree, must mean the money recovery which the parties expected would be finally rendered in favor of Paul, against Hill, upon the principles of the previous decree and the decree of the Supreme Court. By no rules of construction can the lien be extended to Paul's own property, or any indebtedness of Paul to Hill which would be extinguished in taking the account between the parties, — at any rate, of such indebtedness in existence previous to October 12, 1875, from which day Mulloy's lien was to date.

The record shows, however, that Hill had remained in possession of lots Nos. 1 and 2 until they were, by order of the Supreme Court, placed in the hands of a receiver in this

cause. Hill continued to claim them, and they were listed for taxes in his name. It was a natural supposition that these lots would, like other realty of Hill attached in this cause, be subject to the satisfaction of any recovery had against him. And it may be that both parties to the agreed decree intended that Mulloy's lien should extend to the entire recovery, whether of land or money, in the suit. But the language used limits the lien to the amount that may be found due from Hill to Paul. I cannot extend it beyond its fair meaning. And nothing is clearer than that parol testimony is not admissible to alter the terms of the writing, or to show the sense in which one of the parties understood them, except upon a direct proceeding to rectify the agreement, or for a rescission on account of the mis-understanding. *Bridges* v. *Robinson*, 2 Tenn. Ch. 723, and cases cited. Nor can I, of course, restore the defendant Mulloy to any right surrendered by the agreement, upon an answer which merely sets up rights on the strength of its validity.

One other branch of this case remains to be disposed of. M. M. Brien and W. H. Thaxton, as partners under the name of Brien & Thaxton, have filed a petition in this cause *pro interesse suo*, and set up claim to lots 1 and 2, and perhaps other lots attached in this cause, or under its receivers, under tax-titles acquired *pendente lite*, and a release from Hill. The examination of the petitioner Brien shows that he has been, during the whole litigation, the counsel, and the sole counsel, of Hill; that the lots claimed were listed in the name of Hill and as his property, and sold as his property. It seems that some of these lots have been sold two or three times for taxes, and bought each time by the petitioners, or one of them. The principles which regulate the rights of a purchaser at tax-sale of property of a litigant, pending litigation, for whom the purchaser was at the time the counsel, have been considered and determined by me in the following cases: *Brien* v.

*Marsh,* 1 Tenn. Ch. 625 ; *Harrison* v. *Winston,* 2 Tenn. Ch. 544 ; *Brien* v. *Paul* (MS.) April term, 1877, on the tax-titles now relied on. It would be useless to go over the same ground. The petitioners are either assignees of Hill's rights, pending litigation, or purchasers at tax-sales wrongfully permitted to be made by Hill, whose duty it was to pay the taxes. Any purchase which his assignee or counsel might make at tax-sales would enure to his benefit, and be treated as made by him. All that the petitioners can claim, as to lots disposed of by the final decree in the cause, is to be reimbursed the taxes paid, with interest, subject to an account for rents and profits. A decree will be entered accordingly.